## DENVER AND RIO GRANDE RY. CO. *v.* GLASSCOTT.

Where, in an action against a railway company by one of its employees for a balance due him for services rendered as conductor of a passenger train, it was undertaken by the company to prove an offset in moneys alleged to have been collected but not accounted for by the conductor, by comparison of daily returns extending over a period of eleven months, by the plaintiff in the action and a fellow-conductor running alternate days over the same route, *held,* that such method of proof was erroneous, and the evidence properly excluded from the jury; *also,* that where the verdict must, under the law, have been the same, notwithstanding the admission of the evidence excluded, the verdict would not be disturbed.

*Error to County Court of Arapahoe County.*

THE case is stated in the opinion.

Messrs. WELLS, SMITH & MACON, for plaintiff in error.

Messrs. PATTERSON & CAMPBELL, for defendant in error.

THATCHER, C. J. Robert A. Glasscott was a conductor of the defendant company. He brought suit against the company for the balance claimed to be due him for services as conductor rendered to the company, laying his damages at five hundred dollars, for which sum a verdict was returned and judgment entered in the court below. Unless the defendant was entitled to an offset, no dispute arises as to the correctness of the judgment. The company by its pleas and proof offered to offset against the claim of the conductor, the sum of fifteen hundred dollars, which it is alleged that he, as conductor, had collected from passengers traveling on his train, and retained and converted to his own use. To support the allegations of conversion and the amount of the same, plaintiff in error called R. F. Weitbrec, its treasurer, and proved by him that defendant in error had been conductor of passenger trains of plaintiff in error, running between Denver and El Moro, during eleven months next preceding May 1, 1877; that it was the duty

of defendant in error, as such conductor, to collect fare of all passengers on his trains not provided with tickets ; that a round trip of a train run by defendant in error was from Denver to El Moro and back to Denver, a distance of 220 miles each way ; that at the conclusion of every such round trip, defendant in error was required to report to the auditor and treasurer of plaintiff in error the number of passengers carried each way, the points on the route to which and from which they were transported, with the number and kind of tickets on which they traveled, the number without tickets, and the amount of money collected from such passengers, which money it was his duty to turn over to the treasurer at the end of each round trip ; that he, the witness, had in court every one of such reports made by defendant in error during said eleven months ; that plaintiff in error had another conductor, named Cole Lydon, who conducted trains of plaintiff in error on alternate days with defendant in error ; that Lydon made same number of trips as defendant in error in said eleven months ; that said Lydon's trains generally, although not always, contained same number of cars as that of defendant in error ; that number of cars was liable to be increased or diminished as necessities of travel required ; the schedule of fares was same ; that he, witness, also had all of Lydon's reports for said eleven months, and that they were the same as those made by defendant in error, but differed in the amount of money shown to have been received during said eleven months.

The only controversy in this case arises as to the manner in which the company proposed to prove that Glasscott was in default. The theory of the company seems to be that upon the above statement of facts Glasscott should be held liable for the difference between Lydon's receipt and the amount he, Glasscott, paid to the treasurer. With a view to fix his liability and the amount thereof, the attorney of the company interrogated the witness as to the difference between the receipts of the two conductors. This evidence,

and other evidence belonging to the same class, the court excluded. All other evidence offered was admitted. Our only inquiry, therefore, is : Did the court err in excluding the evidence mentioned ? The learned counsel insist that had it been made to appear that there was a difference in favor of Lydon between the total sums paid the treasurer by the two conductors, "if the jury had found for the plaintiff in error, upon that circumstance alone, the court would not have been justified in setting the verdict aside." This proposition is, we think, untenable. The possibility that there might be an exact equality in the receipts of the two conductors is so remote, and subject to so many disturbing influences, that we cannot believe that it can justly be considered as the foundation of legal liability. One conductor may be more attentive to the patrons of the road, and therefore more popular than another. The current of travel may be very unequal on two successive days, and this may continue for weeks. Excursion trains, crowded with passengers, may have been run on certain days, which might materially increase the receipts on such days. On one day every passenger getting on board at Denver might be provided with a ticket, and the receipts at this point in consequence be nothing. The next day one or a dozen passengers may have boarded the train and have forgotten to buy tickets. The same thing is liable all along the line, so that even if the number of passengers carried by each conductor during the period of eleven months, or any shorter period, should be the same, it is by no means, in our judgment, a fair inference that the receipts will be the same, or approximately so. Counsel treats us with a metaphysical disquisition on the " Doctrine of Chances " and the " Theory of Probabilities," and even indulge in algebraic equations for the purpose of demonstrating the remoteness of the possibility that the receipts of the two conductors would be the same. We have not thought it necessary to solve the algebraic problem with a view to determine the chance of equality of receipts. It is true that *cæteris paribus* the

position that an equal number of persons would forget to buy their tickets each day before entering the cars is not unsupported by metaphysical writers. Says Mr. Henry Thomas Buckle, in his work on the "History of Civilization in England" (Vol. 1, page 32): "We are now able to prove that even the aberrations of memory are marked by a general character of necessary and invariable order. The post-offices of London and of Paris have latterly published returns of the number of letters which the writers through forgetfulness omitted to direct; and *making allowance for the difference of circumstances*, the returns are year after year copies of each other. Year after year the same proportion of letter writers forget this simple act; so that for each successive period we can actually foretell the number of persons whose memory will fail them in regard to this trifling, and as it might appear, accidental occurrence."

Whether or not forgetfulness is under unvarying laws, certain it is, in our opinion, that in addition to forgetfulness, there is such a complication of causes tending to vary the receipts of the two conductors, that it would be unsafe, as well as unwarranted, to adopt the rule for which plaintiff in error contends. We can find no support for it in the adjudicated cases.

For eleven months Glasscott had been the trusted agent of the company. With regularity at the close of every round trip he accounted to the company for the alleged amount of his receipts. Of his own accord, without the slightest suspicion as to his fidelity having been expressed against him, he quit the company's service. The fact of the difference between the receipts of the two conductors, had it been proved, would have been far from establishing the matter in dispute, viz.: that the difference had in fact been collected and embezzled by Glasscott. It is so remote a circumstance that, had the rejected evidence been received, the jury would not have been warranted in rendering a different verdict. The verdict, had the excluded evidence been admitted, not only might but *must*, under the law, have been the same. In such case the rule is that the verdict

should not be disturbed. *City Bank of Brooklyn* v. *Dearborn*, 20 N. Y. 246; *Starbird* v. *Barrows*, 43 id. 200.

The judgment of the court below will be affirmed with costs.

*Affirmed.*

Mr. Justice STONE, having been of counsel, did not sit in this case.